JANON FISHER and ANTONIO T. CAROZZO, Co-
Partners, Trading as Fisher & Carozzo,

*vs.*

ELLIOTT VANDEVANTER.

*Construction Contract—Delivery of Materials—Instructions as
to Damages.*

A provision, in a subcontract for the construction of a road,
for the delivery of materials by the contractor "at the site of
the work," means delivery at the place where the materials are
needed in the course of the normal progress of the work, and
not at a point on the projected roadway remote from the scene
of the subcontractor's operations. p. 252

In an action by a subcontractor against the head contractors,
*held* that the evidence was sufficient to justify the submission
to the jury of defendants' failure to deliver materials as agreed,
for the use of the subcontractor, and the amount of damage
accruing thereby to plaintiff. p. 253

In an action by a subcontractor against the head contractors
for breach of contract, plaintiff's prayer on the subject of dam-
ages, based on the hypothesis that he was justified in discon-
tinuing the work because of defendants' default in delivering
materials, which told the jury to allow plaintiff for the work
actually done by him under the contract, and to credit defend-
ants with payments made by them to plaintiff, and for materials
which they furnished him, *held* not inconsistent with defend-
ants' prayer instructing the jury to allow plaintiff the contract
price of the stipulated work, added to the amount of damage
caused him by defendants' failure to deliver materials, deduct-
ing payments made by defendants to plaintiff, the cost of ma-
terials supplied by them, and the reasonable cost of completing
the work. pp. 254, 255

*Decided December 2nd, 1920.*

Appeal from the Court of Common Pleas of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John L. V. Murphy* and *Edwin H. Brownley*, for the appellants.

*James Morfit Mullen*, for the appellee.

URNER, J., delivered the opinion of the court.

The record in this case is large, but the questions to be decided are few and simple. The suit is for the breach by the appellants of a contract for the construction by the appellee, as sub-contractor, of about three miles of concrete road in Baltimore County, which the appellants had contracted to build for the State Roads Commission.

It was provided by the sub-contract that the crushed stone, sand, and cement, required for the road, should be furnished by the appellants at stated prices, and delivered by them at the site of the work. The quantities of stone and sand thus furnished were to be ascertained from the estimate of the engineer of the State Roads Commission as to the dimensions of the concrete incorporated in the roadway. Work under the sub-contract was begun early in August, 1916, and was suspended on the eighth of the following December on account of weather conditions. At that time, about two and a quarter miles of the road had been constructed. It was stipulated both in the appellants' contract with the State Roads Commission, and in the sub-contract with the appellee, that the road should be completed on or before December 1, 1916, but the Commission appears to have waived that requirement. As the concrete work could not be properly done during the winter months, the construction of the road was interrupted until the following spring. In the interval

efforts were made by the appellee to induce the appellants to adjust certain losses which the former claimed to have suffered because of the alleged failure of the latter to make deliveries of crushed stone in sufficient quantities and at suitable times and places, so that the work could be regularly prosecuted. Because of the refusal of the appellants to recognize this claim, the appellee declined to proceed further with the performance of the sub-contract. The road was completed by the appellants in the spring and summer of 1917.

In the pending suit the appellee seeks to recover damages for the losses alleged to have been incurred in the manner just indicated, and the appellants, in addition to their denial of that claim, plead the breach of the appellee's contractual duty to finish the road, and they make a counter-claim for the amount of the cost of its completion in excess of the sub-contract price. The appeal is from a judgment entered on the verdict of a jury in favor of the appellee for the sum of $2,500.

The first question arises upon a demurrer to the declaration, which contained four counts. The demurrer was sustained as to the third and fourth counts, while as to the first and second it was overruled. Objection is made to the first count because, in alleging the non-delivery of materials by the defendants at proper times for the due performance of the work, it proceeds upon the theory that it was their duty under the sub-contract to furnish the materials "when required by the plaintiff," which theory is said by the defendants not to be supported by the agreement. This criticism appears to misconstrue the meaning of the allegation to which it is directed. The context of the declaration shows that the allegation of a duty on the part of the defendants to deliver the materials when required by the plaintiff was simply intended as an averment that the defendants were obliged to furnish the materials at the time when they would be needed by the plaintiff, acting with reasonable diligence for the performance of the work within the stated period. This was the evident purpose of the contract.

The second count charged a failure by the defendants to deliver the material for the road "at the site of the work," as the sub-contract provided. The claim under this count, as shown by the bill of particulars, is that crushed stone and sand were in some instances delivered at places unsuitable for their use, and that the plaintiff was thus subjected to loss and expense. It was the theory of the demurrer to this count that, as the materials were admitted to have been placed somewhere along the road in process of construction, the requirement of delivery "at the site of the work" appeared by the plaintiff's own averments to have been fulfilled. But we are unable to give such an effect to that provision. It was certainly not intended that the deliveries of materials could be made at places where they could not be conveniently used for the construction purposes for which they were designed. The "site of the work" was not some point on the projected roadway remote from the scene of the sub-contractor's operations, but the place where the materials were needed for the work in the course of its normal progress. The ruling on the demurrer to the counts we have considered was proper.

As elements of the damages alleged to have been sustained as a result of delay in the delivery of materials the plaintiff claimed: $1,607.21 as "direct loss in overhead expenses and for labor," $1,142.16 for "loss in efficiency of concrete gangs," $923.40 for "loss in efficiency of gangs doing grading, etc., work," $387.00 for "cost reloading, hauling and storing cement," $78.00 for "cost of rehandling material," and $1,125.00 for "loss of plaintiff's time from November 3, 1916, to March 21, 1917." He also claimed $1,701.57 as profits he would have earned on the portion of the work completed by the defendants. Testimony as to all of these items was admitted subject to exception, but at the close of the trial, on motion of the defendants, all evidence was excluded which referred to the claims for impairment of labor efficiency, loss of plaintiff's time, and loss of profits. Instructions were also granted at the defendants' request excluding those items from the consideration of the jury. The principal ex-

ceptions requiring consideration are those relating to the com-
petency and legal sufficiency of the evidence offered by the
plaintiff to prove default in the deliveries of crushed stone
and the consequent damage.

The defendants proposed an instruction, which was grant-
ed, submitting to the jury, among the issues to which it re-
ferred, the questions as to their failure to deliver materials
and as to the amount of the damages to the plaintiff thereby
occasioned. It was impliedly assumed by their prayer that
the evidence was legally adequate to justify the submission of
those issues. But apart from the effect of this theoretical
concession, it is clear that the evidence adduced to prove the
alleged breach and the resulting damage was admissible and
legally sufficient for the purposes for which it was offered.
The plaintiff testified in detail as to frequent delays in the
deliveries of crushed stone needed for the road work while it
was in progress, as to the duration of the idleness thus en-
forced upon the "concrete gang," and as to the amount of
the additional expense to which the plaintiff was thus sub-
jected. This testimony was supported in some of its import-
ant details by other witnesses. It was the defendants' con-
tention that the plaintiff failed to prove the quantities of
stone actually delivered, and that hence it is impossible to
determine to what extent, if at all, the supply was deficient.
There was testimony also on behalf of the defendants tend-
ing to show that the stone delivered was not used with proper
economy. But the testimony produced by the plaintiff was
to the effect that the material was properly used, and the
quantities were proven from the estimates of finished con-
crete made by the engineer of the State Roads Commission,
that being the method authorized by the sub-contract for the
ascertainment of the quantity of stone supplied. There was
no error in the admission of evidence offered by the plaintiff
on the issues left open by the trial court's final rulings or in
the submission of those issues to the jury.

The limitations imposed by the granted prayers upon the plaintiff's right of recovery and the allowance of damages have rendered immaterial some of the questions raised by the exceptions to evidence, and the conclusions already stated dispose of most of the exceptions of that class. In none of the rulings as to the admissibility of evidence have we found any reversible error.

By the defendants' first prayer, which was granted, the jury were instructed that if they should find the plaintiff failed or refused to continue the construction of the road after partial performance of the contract, and that it was completed by the defendants, then, in making up their verdict they should allow to the plaintiff the total contract price of the road in question, as shown by the testimony, and add thereto the amount of the damage, if any, which the plaintiff may be found to have been caused by the failure of the defendants to furnish materials, and should then deduct all payments made by the defendants to the plaintiff on account of the road work, the cost of all materials supplied by the defendants, the rental of the construction outfit provided by the defendants under the terms of the sub-contract, and the fair and reasonable cost of completing the work left unfinished by the plaintiff, and that if a balance remained after these deductions were made, the verdict should be in favor of the plaintiff for the amount of such balance, with interest in the discretion of the jury, and if the amount of the specified deductions should equal the amount of the allowances to the plaintiff, then the verdict should be for the defendants, and if the deductions exceeded such allowances, the verdict should be in favor of the defendants for such excess, with interest in the jury's discretion.

An instruction on the subject of damages was also granted at the plaintiff's instance. It directed the jury, in the event they found for the plaintiff, to allow him for all work done by him under the contract, at the stipulated prices, and to credit the defendants with all sums paid to the plaintiff, and

for all materials furnished by the defendants to the plaintiff and used by him in the work, upon the basis of the contract prices and authorized measurements, the parties to be also charged with other items admitted by them respectively to be correct, and the verdict to include interest, in the discretion of the jury, on the balance thus ascertained. This prayer is said to be improper in theory and in conflict with the defendants' first prayer. In our opinion the two instructions are not essentially inconsistent. They proceed upon opposing theories as to the responsibility for the discontinuance of the road work by the plaintiff, and consequently deal with the question of the right and measure of recovery from different points of view. The plaintiff's prayer was proper on the hypothesis that he was justified in discontinuing the work because of the defendants' alleged default. In that event he was entitled, as part of his recovery, to be paid for the work actually done under the contract, and the defendants had the right to be credited for the payments they made to the plaintiff and for the materials used by him which they furnished. This is the meaning and effect of the plaintiff's fourth prayer, and there is nothing in it to the defendants' prejudice. It was really less favorable to the plaintiff in one respect than the measure of damages stated in the defendants' first prayer, as that made allowance for losses resulting from failure to deliver materials, while the plaintiff's fourth prayer made no specific reference to that subject, and a separate prayer offered by him relating to such damages was refused as not being in proper form.

The case was tried by the court below with due consideration of the defendants' rights, and the record presents no rulings of which they may justly complain.

*Judgment affirmed, with costs.*